UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAZARO ROMERO LEON,

Petitioner,

v.

MERRICK GARLAND, et al.,

Respondents.

Case No. 5:25-cv-03379-HDV-AJR

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [10]**

## I.    INTRODUCTION

Petitioner Lazaro Romero Leon, a Cuban national, entered the United States around 1992 and settled in Puerto Rico.  After sustaining criminal convictions, on August 7, 2002, Leon was issued a final order of removal by an Immigration Judge.  Because he was not immediately removable, he was released on an order of supervision, most recently in 2009.  In the nearly two decades since, he has regularly checked in with ICE, complied with his conditions of release, and committed no crimes.

On May 20, 2025, Leon was arrested by ICE outside his home in Puerto Rico.  He was detained in Puerto Rico, then transferred to both the Adelanto Detention Center in California and the Florence Processing Center in Arizona.  This habeas petition followed.

Before the Court is Leon's request for a temporary restraining order and preliminary injunction ("Motion"). [Dkt. 10].[1]  The Court initially granted the Motion in part and enjoined Respondents from removing Leon pending resolution of the Motion.  [Dkt. 15].  But several days later, Respondents removed Leon to Mexico in violation of this Court's order.  After nearly three months, Respondents finally effectuated Leon's return to the United States, where he now remains in ICE custody at the Adelanto Detention Center.  *See* Status Report [Dkt. 42].

For the reasons discussed below, the Motion is granted.  Respondents are ordered to release Leon from custody forthwith.

## II.    BACKGROUND

Petitioner Lazaro Romero Leon, a Cuban national, entered the United States around 1992 and settled in Puerto Rico.  On August 7, 2002, after sustaining two criminal convictions related to forgery and marijuana possession, Leon was issued a final order of removal by an Immigration Judge.  *See* Palacios Decl. [Dkt. 12-1] ¶¶ 8–9.  Because he was not immediately removable, he was released on an order of supervision several months later.  *Id*. ¶ 10.  Petitioner sustained two additional convictions in 2007, was detained by ICE, but was again released on an order of

---

[1] The Motion is fully briefed.  *See* Opposition [Dkt. 12]; Reply [Dkt. 13]; Respondents' Supplemental Briefing [Dkt. 17]; Petitioner's Response to Respondents' Supplemental Briefing [Dkt. 18].

supervision in April 2009.  *Id*. ¶¶ 11–14.  In the nearly two decades since, he has regularly checked in with ICE, complied with his conditions of release, and committed no crimes.

On May 20, 2025, Leon was arrested by ICE outside his home in Puerto Rico.  *Id*. ¶ 15.  He was detained in Puerto Rico, then transferred to both the Adelanto Detention Center in California and the Florence Processing Center in Arizona.  *Id*. ¶¶ 16–19.  Respondents never provided Leon with notice that his order of supervision was revoked, nor did he receive an informal or formal interview.  Amended Petition at 5 [Dkt. 14].

Leon, initially proceeding in pro per, filed this Petition for Writ of Habeas Corpus on December 8, 2025.  Petition [Dkt. 1].  The Federal Public Defender entered a notice of appearance on January 16, 2026, then Leon filed the present Motion for a temporary restraining order and preliminary injunction on February 9, 2026, followed by an Amended Petition for Writ of Habeas Corpus on February 13, 2026.  [Dkts. 6, 10, 14].

On February 13, 2026, the Court granted the Motion, in part, and enjoined Respondents from "transferring, relocating, or removing Petitioner outside of the Central District of California (including, but not limited to, transferring Petitioner to an ICE facility outside of the Central District or removing Petitioner from the United States) pending resolution of the [Motion]."  [Dkt. 15] at 2. The Court specifically ordered that Respondents are "***enjoined from removing Petitioner from the United States to Mexico on Monday February 16, 2026***, or at any time thereafter or to any other country, until this Court has fully resolved the [Motion]."  *Id*. (emphasis in original).  Despite the Court's order, Leon was removed to Mexico on February 16.  *See* [Dkt. 18].  The Court ordered Leon's immediate return to the United States.  [Dkt. 19].

While the government attempted to return Leon to the United States, he was detained at the Siglo XXI immigration detention center in Tapachula, Chiapas and issued an exclusion order by the Mexican government requiring him to leave Mexico within five days.  *See* [Dkt. 39-1].  Leon was not brought back to the United States until May 8, 2026—nearly three months after his unlawful removal.  *See* Status Report [Dkt. 42].

2

### III.    LEGAL STANDARD

The standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). To prevail on such a motion, the movant must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent the temporary restraining order, (3) the balance of equities tips in his favor, and (4) a temporary restraining order is in the public interest. *Winter v. Nat. Ress. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Where the non-movant is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another." *Id*. at 684 (citation omitted). "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id*. (citation omitted).

### IV.    DISCUSSION

#### A.    Likelihood of Success

Detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." *Id*. § 1231(a)(6).

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a). Section 241.4, titled "Continued detention of inadmissible, criminal, and other aliens beyond the removal period," sets "out procedures DHS must follow to impose continued detention." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

3

Section 241.13, titled "Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future," implements the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Guzman Chavez*, 594 U.S. at 529. In *Zadvydas*, the Supreme Court held that a noncitizen may be detained only for a period "reasonably necessary" to bring about their removal from the United States—presumptively six months. 533 U.S. at 689, 701. After that point, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release them. *Id.* at 701.

Both sections also contain provisions governing the *revocation* of release. *See* 8 C.F.R. §§ 241.4(l), 241.13(i). Under section 241.4(l), release may be revoked when a noncitizen violates the conditions of their release or "in the exercise of discretion when, in the opinion of the revoking official": (i) The purposes of release have been served; (ii) The [noncitizen] violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against a[ noncitizen]; or (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(l)(1), (2). Under section 241.13(i), release may be revoked if a noncitizen violates the conditions of their release or "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2).

Both sections establish certain required process for the revocation of release. Upon revocation of release, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). If the noncitizen continues to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "which will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. §§ 241.4(l)(3); 241.13(i)(2) ("[I]f the [noncitizen] is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the alien's continued detention pending

4

removal.").  "In simpler terms, in order to revoke release, the government must notify the noncitizen of the ***reason*** for the revocation and give them both an ***informal and formal interview***."  *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

Release can be revoked if a noncitizen violates the conditions of release or "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. §§ 241.13(i)(1), (2); *see also* 241.4(b)(4).  Here, there is no allegation that Leon violated any of his conditions of release.  *See* Opposition [Dkt. 12]; Respondents' Supplemental Briefing [Dkt. 17].  And there is no evidence that the government can demonstrate that, "on account of changed circumstances," there is now a "significant likelihood" that he will be removed to Cuba "in the reasonably foreseeable future."  *See* Opposition at 4; Amended Petition at 2–4.

But even if there were changed circumstances rendering Petitioner's "reasonably foreseeable" removal "significant[ly] likel[y]," the Court finds that Petitioner has demonstrated a likelihood of success on his claim that the government did not comply with the process laid out in 8 C.F.R. § 241.13(i)(2), (3).  First, Leon was never notified of the reasons for revocation of his release.  He avers that he was given no prior notice that he would be detained and never informed or presented with evidence of a violation of his conditions of release.  Amended Petition at 5.  Second, there is no evidence that Leon has been afforded a meaningful informal or formal interview.  Respondents have not argued that they complied with either of these procedures when they re-detained Leon in May 2025.

These failures by the government are in clear violation of the requirements of 8 C.F.R. § 241.13(i)(3).  Many courts—including this one—have routinely found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release.  *See, e.g.*, *Delkash*, 2025 WL 2683988, at *5–6 (collecting cases); *Quan*, 2025 WL 3691858, at *6; *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025).  And to the extent another layer of analysis is required, the Court again would follow its sister courts in finding that the failure to follow these procedural requirements violates the due process clause.  *See Hoang v. Santa Cruz*, No. 5:25-cv-02766-JGB-JCx, 2025 WL 3141857, at * 3–4 (C.D. Cal. Oct.

28, 2025); *Bui v. Warden*, No. 25-cv-2111-JES-DEB, 2025 WL 2988356, at *2–5 (S.D. Cal. Oct. 23, 2025); *see also Quan*, 2025 WL 3691858, at *6.

### B.    Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities" and "the economic burdens imposed on detainees and their families as a result of detention[.]" Leon has been detained for over one year, including three months in Mexico following his unlawful deportation in violation of this Court's order. This deprivation of his rights certainly constitutes irreparable harm. Accordingly, this factor weighs in favor of granting the preliminary injunction.

### C.    Balance of Equities and Public Interest

Finally, the balance of equities and public interest "tips sharply" in favor of Leon. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Of course, the government and the public have a significant interest in enforcement of the United States's immigration laws, but that includes an interest in "upholding procedural protections against unlawful detention." *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *7 (N.D. Cal. July 24, 2025) (citation omitted). Without these procedures, the government cannot guarantee the accuracy of the outcome. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters. After all, without due

6

process, there is no way to tell whether the result is in fact correct.").

## V.    CONCLUSION

For the reasons stated herein, the Court grants the preliminary injunction as follows:[2]

- Respondents are ordered to ***release Leon from custody forthwith***, with no additional conditions of supervision, including no electronic monitoring.

- Respondents are enjoined and restrained from re-detaining Leon unless they follow the procedures set forth in 8 C.F.R. §§ 241.4, 241.13.

- Respondents are enjoined and restrained from removing Leon to a third country unless he is provided with notice and an opportunity to be heard in accordance with 8 U.S.C. § 1231(b).

The parties shall file a joint status report regarding Respondents' compliance with this Order no later than **May 27, 2026**.

Respondents are ordered to disseminate this Order to the immigration agents in charge of processing Leon and to place a copy of this Order in Petitioner's A-File.

Any issues remaining in this matter are referred to Magistrate Judge A. Joel Richlin for further consideration.[3]

Dated: May 22, 2026

Hernán D. Vera
United States District Judge

---

[2] Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

[3] For example, Leon has requested that his counsel be reimbursed, pursuant to the Equal Access to Justice Act, for the $351.37 cost to purchase a bus ticket to return Leon to the United States. *See Ex Parte* Application [Dkt. 43].